## EMMONS *v.* MURRAY.

A voidable deed of an infant can not be avoided by him during his minority.

It requires for its ratification, either some act to be performed by the grantor after becoming of age designed expressly for that purpose, or such a course of conduct as can not reasonably be reconciled with an opposite interest.

Remaining six years after coming of age without taking measures to avoid a deed made in infancy, and declaring to a stranger that such a deed had been made and that the grantee could occupy according to its

terms, the grantee living all the time in the actual occupancy of the land, amount to a ratification.

Notice, to break in upon the registry laws, must be such as to charge the second purchaser with fraud, or must be very clearly proved.

Possession of land is in general notice to the world that the occupant has a deed. But this is not an inflexible rule, and is not in general applicable where the first purchaser had been long in possession before taking his deed.

WRIT OF ENTRY. There were five counts in the writ. No evidence was offered under the third count. . The demandant introduced a copy of a judgment in favor of Ezekiel Webster against the tenant at the November term 1826, of the Superior Court in this county, recovered in a writ of entry for the land described in the first count. Also a copy of a judgment in favor of said Webster against the tenant at the May term 1819, of the Superior Court in this county, in a writ of entry for two tracts of land, one of which is the tract described in the second count. Also a copy of a judgment in favor of Thomas Sargent against the tenant, recovered at the September term 1820, of the Superior Court in this county, and a copy of the execution which issued thereon, and a copy of a levy made by virtue of said execution on the 26th of February 1821, on the land described in the fourth count. Also a copy of a quitclaim deed of the land so levied on, from the said Thomas Sargent to Phineas Sargent, dated February 18, 1822. Also a copy of a deed of said premises from Phineas Sargent to Webster, dated February 16, 1826. It was admitted that Webster died previously to February 23, 1830, leaving Alice B. and Mary Ann Webster, his minor children, his heirs at law.

The demandant introduced a copy of a letter of guardianship from the Judge of probate for the county of Merrimack, in which said minor children resided, appointing Charles B. Haddock their guardian, dated February 23, 1830. Also a copy of a license from the Judge of

probate to Haddock, authorizing, him to sell certain real estate of his wards, including the land described in the writ. Also a deed from Haddock in his said capacity, dated August 27, 1831, of the land described in the third count. He called Joseph Cass as a witness, who testified that he attended a sale of lands by auction made by said Haddock as guardian, as aforesaid, at the same time that the demandant purchased a part of the land so sold; and that the witness bid off all the lands so sold that were not bid off by the demandant; that Haddock executed to him, at that time, a deed of the land, which was acknowledged and witnessed by two witnesses, but who the witnesses were he does not remember; that he had no particular knowledge of the lands he thus purchased, and can not tell how they were described in the deed; but he knows it was a part of the farm occupied by the tenant, and from his general recollection of the situation of said land, thinks it is the land described in the first two counts in the demandant's writ—thinks said deed was present when his deed to Charles C. Murray, dated February 3, 1832, was made, and by said deed he intended to convey the same land which Haddock had conveyed to him; that he has searched for said deed among his papers several times, and is unable to find it, and does not know where it is. It is admitted that there is no record of any such deed. Cass also testified that the tenant once told him, that he had said deed, that the witness handed it to him to get it recorded; but the witness testified, that he has no recollection of any such fact. Notice was given to the tenant to produce the deed but it was not produced. The demandant also introduced a copy of a deed from the said Joseph Cass to Charles C. Murray, dated and acknowledged February 3, 1832, recorded February 8, 1833, conveying lands described in the first and second counts. Also a deed of said lands from Charles C. Murray to John Emmons, the demandant, dated and acknowledged Sep-

tember 26, 1839, recorded September 27, 1839. It was admitted that Charles C. Murray, who is a son of the tenant, became twenty-one years of age in April 1833.

In defence the tenant introduced a life lease of all the lands described in the writ from the said Charles C. Murray to him, dated and acknowledged February 3, 1832, and recorded November 19, 1841. He proved that he had occupied the premises in the same manner for more than twenty years past. He also called the said Cass as a witness, who testified, that after Charles C. Murray was twenty-one years of age he had a conversation with him in relation to his lease to his father, and to a deed he had made to the demandant before he was twenty-one years of age; and he said he had given his father a life lease, and his father could hold the land as long as he lived.

The demandant then introduced a deed of the premises from Charles C. Murray to himself, dated and acknowledged December 19, 1832, and recorded November 5, 1834.

The tenant introduced a bond of the same date from the demandant to said Charles C. Murray, in the penal sum of $300, conditioned to reconvey the premises upon the payment of $109, for the rent of the premises annually, at the end of three years.

The demandant urged, that the declarations of Charles C. Murray to Cass did not make a ratification of said lease, and the tenant insisted that they did.

A verdict was rendered for the demandant, on which judgment is to be rendered or it is to be set aside and such a verdict entered as this court may direct.

*Perley,* for the demandant.

*Quincy,* and *Kittredge,* for the tenant.

Woods, J. This is a writ of entry, in which the demandant counts upon his seizin of sundry parcels of land.

Those described in the first and second counts, and concerning which the questions in this case are made, are derived by the demandant from the tenant himself through several processes and conveyances, the regularity and sufficiency of which are not disputed, until the land is traced into the hands of Charles C. Murray, to whom it was conveyed during his minority.

The next deed in the order of time is from him to the tenant; and assumes to convey the premises to him for the term of his natural life. It is dated on the third day of February 1832, and recorded on the 19th of November 1841.

On the 19th of December 1832, followed another deed from the same grantor, purporting to convey the premises to the demandant in fee. This was recorded on the 5th day of November 1834.

These two deeds were executed by Charles C. Murray while yet an infant, he having attained to the age of twenty-one years in April 1833.

On the 26th of September 1839, he executed a third deed of the same premises, by which he undertook to convey them to the demandant in fee.

It appeared at the trial that the tenant had been in the occupation of the premises for a period commencing long before the title was acquired by Charles C. Murray, and had continued that occupation without any change in its character during the entire period in which the various conveyances had been executed from one party to another, as has been described.

The tenant introduced a witness who testified that Charles C. Murray, after he had come of age, had a conversation with him in relation to the lease which he had given to his father while a minor, in which Murray said, that he had given such a lease, and that his father could hold it as long as he lived.

The ground assumed by the tenant at the trial was, that

this conversation amounted to a ratification of the lease. This position however was not sustained by the court, and a verdict was rendered for the demandant, on which judgment is to be rendered, or it is to be set aside and such a verdict entered as this court may direct.

That the acts of an infant, not deriving absolute validity from the fact of their being, in legal presumption, for the benefit of the infant, and conducive to the ends which are deemed by society of primary importance, such as his support and education according to his degree, are not wholly void, but voidable only, is well established. But as to the conditions upon which those voidable acts acquire validity, as those of a person of the full age requisite to perform such, or on the other hand, become annulled and avoided, it may be proper to make some examination of the authorities.

It is perfectly settled that no direct measure for the purpose of disaffirming such an act, can be taken by any other person than the infant himself, or the party who would be entitled to the estate or other thing disposed of by the voidable act. This is elementary doctrine. 2 Kent's Com. 237.

In the case of *Zouch* v. *Parsons*, 3 Bur. 1794, the question arose, whether the conveyance of an infant could be avoided by him during his minority; and it was held, that it could not. This case has been deemed conclusive authority upon that point, in those that have arisen since; and no question seems to be entertained that an infant's conveyance of land is binding upon him during his nonage, and that no other person has the power during that period to draw it in question. *Roof* v. *Stafford*, 7 Cowen 179; *Bool* v. *Mix*, 17 Wendell 119; *Tucker* v. *Moreland*, 10 Peters' S. C. 75.

The question whether a gift or sale of chattels may be avoided by the infant who has made it, before coming of age, was discussed in some of those cases, and has been

elsewhere entertained, but need not be here pursued with a view to obtaining further light upon the point arising here.

The conclusion therefore is, that the deed of Charles C. Murray to the demandant, made on the 19th of December 1832, did not in law amount to a disaffirmance of the life lease made by him to the tenant on the third day of February 1832; he having been an infant when both deeds were executed.

But Charles C. Murray attained to the age of twenty-one years in April 1833, and became capable of disaffirming or of ratifying, by proper means, the acts of his nonage; and an important question is presented by the case, whether by any thing that he did, or by his mere inaction during the period that intervened between that event and the 26th day of September 1839, either of those acts derived confirmation.

It appears that the tenant remained in possession of the land, exercising the ordinary acts of a tenant for life, or even as a tenant in fee, as he had done from a time somewhat anterior to the execution of his lease, and that the happening of this event was not attended by any apparent change in the character of his occupancy.

It also appears from the testimony of Cass, that the attention of Charles C. Murray was called to the lease, and to the deed which he had made, and that he remarked to the witness, "that he had given his father a life lease, and his father could hold the land as long as he lived."

Upon this evidence the question arises whether the life lease was, prior to the 26th day of September 1839, ratified by the lessor, Murray. Chancellor Kent says, "If any act of confirmation be requisite after he comes of age, to give binding force to voidable acts of his infancy, slight acts and circumstances will be a ground from which to infer the assent. But the books appear to leave the question in some obscurity, when, and to what extent, a

positive act of confirmation on the part of the infant is requsite." He then cites the case of *Holmes* v. *Blogg*, 8 Taunt. 35, the doctrine of which he concludes to be, that without some act of dissent, all the voidable contracts of the infant would become binding. He however proceeds to say, that "there are other cases which assume that a voidable contract becomes binding upon an infant, only by reason of acts and circumstances amounting to an affirmance of the contract."

Such was the doctrine of *Thompson* v. *Lay*, 4 Pick. 48, in which it was held, that "the promise of an infant can not be revived so as to sustain an action, unless there be an express confirmation or ratification after he comes of age. Such a ratification can not be proved by a mere acknowledgment of debt." Such was also the doctrine of *Ford* v. *Phillips*, 1 Pick. 202, in which the party having come of age, admitted that he owed the plaintiff, but was unable to pay, and would endeavor to get his brother to be bound with him.

In *Thing* v. *Libbey*, 16 Maine 55, the court say, that the acts of the infant, to amount to a confirmation, ought to be of such an unequivocal nature, as to establish a clear intention to confirm the contract after coming of age, after a full knowledge that it was voidable.

In *Tucker* v. *Morland*, 10 Peters' S. C. 75, which was a case in which a deed had been executed by the infant, it was held, that the acts of confirmation by the party on coming of age, should be of such a solemn and unequivocal nature, as to establish a clear intention to confirm the deed after a full knowledge that it was voidable.

In *Wallace* v. *Carpenter*, 11 Johns. 538, it was held that a neglect for a period of ten years after coming of age, to avoid a deed made in infancy, was not such acquiescence as amounted to a confirmation of the act, and it was said, that it would be contrary to the benign principles of the law, that a mere acquiescence, without any intermediate

or continued benefit showing his assent, should operate as an extinguishment of his title.

In *Boynton* v. *Burchin*, 14 Johns. 124, it was decided, that the declarations of the grantor after coming of age, that he had sold the land to the person under whom the defendant claimed, and his refusal in consequence, to sell it to the party to whom the declarations were made, and his omission for about nine years, to take measures to avoid the sale, did not amount to a ratification of it.

In this State, the conditions requisite for the confirmation of the voidable acts of infants, have been considered in various cases.

In *Hoit* v. *Underhill*, 9 N. H. 436, it was held, that declarations made to persons not interested in the matter, by one who is of age, that he intends to pay the note in question which he had made during his minority, do not amount to a ratification of the act. "There must be either a direct promise voluntarily made after the individual becomes of age, to the party himself or his agent, to pay; or there may be a ratification of the contract by certain acts accompanied by declarations showing a clear recognition and confirmation of the contract, or by acts alone, such as the sale of real estate, or disposal of other property after the infant becomes of age, or the use and improvement of such estate or property when sufficient time has expired to afford him reasonable opportunity to rescind the contract, and he neglects it, in order to render an individual liable after he has become of age, for his contracts made when an infant."

The same thing had in substance been said in *Hale* v. *Gerrish*, 8 N. H. 374, in which the defendant, on being asked by the plaintiff, concerning the debt, said that he owed the debt, and that the plaintiff would get his pay, and added "I suppose this is all you want." This was held insufficient, and it was said that there must be either a direct promise or "positive acts of the infant after com-

ing of age in favor of his contract, which are of a character to constitute as perfect evidence of a ratification as an express and unequivocal promise."

In *Robbins* v. *Eaton*, 10 N. H. 561, the point decided was, that remaining in possession of the land four years after coming of age, was an affirmance of the contract. The decision proceeded upon the doctrine of the other cases, that a positive ratification was necessary, and that this voluntary continued perception of its benefits was such. *Aldrich* v. *Grimes*, in the same volume 194, admits the same doctrine, and calls in question that of *Holmes* v. *Blogg*, 8 Taunt. 35.

The doctrine has been laid down in strong terms by *Daggett*, J., in Connecticut; who in pronouncing the opinion of the court in *Benham* v. *Bishop*, says, " An infant buys a horse, carriage, or land, gives his promissory note for the price, and upon coming of full age does not return the property nor offer to return it, to a suit on the note he pleads infancy, and a new promise is replied, will that evidence support the issue?" The case decided, that remaining in possession of land so acquired, did not amount to an affirmance of the voidable transaction by which the party acquired it.

Perhaps the doctrine of that case may not be in perfect harmony with that of *Robbins* v. *Eaton*, in our own court, nor is it necessary to adopt the strong terms in which it is couched, yet it is worthy of being cited in support of the general proposition, that the voidable acts of an infant do not at once ripen into valid transactions, upon the expiration of his minority, without some voluntary act performed with an intention to affirm them, or which is not honestly compatible with an opposite intention.

There are indeed authorities to the effect that these voidable acts become binding upon the party unless he disaffirm them within a reasonable time after arriving at full age. Such is the dictum of *Redfield*, J., in *Richardson*

*v. Bright,* 9 Verm. 368, as also that of *Dallas,* J., in *Holmes v. Blogg,* in 8 Taunt. already cited. There may be others; but the weight of authority, in this country at least, undoubtedly is, that such defeasible acts require for their confirmation some express measure designed for that purpose, or some decisive course of conduct that can not be reconciled reasonably with an opposite intent.

If, for example, the infant upon coming of age uses or disposes of the property acquired by the voidable contract, he manifests a purpose of abiding by it, and disenables himself in many cases, from restoring the party to his former condition. By a parity of reason it would seem, that lying by after coming of age, and seeing the purchaser make valuable improvements upon the estate, would evince to common perception the same purpose, and by rendering the avoidance of the grant unconscientious, amount to a confirmation. So a lease made during infancy has been held to be affirmed by the acceptance of rent after coming of age.

In the case now before us, Charles C. Murray in his infancy made a lease of the demanded premises to his father, the tenant, for life. The tenant was then in possession, and so remained till after the expiration of six years from the grantor's arriving at full age, cultivating the estate and using and enjoying it. Charles C. Murray knew that the tenant so occupied the land, and during the period of over six years that followed his coming of age, did not interpose in any way to disturb the possession. On the contrary, in a conversation with Cass concerning this deed and concerning a deed that he had subsequently given the demandant, also in his infancy, said that "he had given his father a life lease, and that his father could occupy the land while he lived."

In *Tucker* v. *Moreland,* 10 Peters 65, already referred to, the question distinctly arose, and it was clearly decided that the mere recognition by one who had come of age,

that the conveyance had been made, was not a confirmation of it. It was also distinctly decided, that the omission of the party for several months after coming of age, to take measures to avoid the conveyance, or to object in any way to it, he having all the time been in the possession, did not amount to an affirmation of the act.

*Brayton* v. *Burchin,* 14 Johns. 124, also before cited, was perhaps a still stronger case; for then the infant acquiesced nine years after coming of age without objection, and during the time declined to convey to another, assigning for a reason the conveyance he had made in his infancy. This acquiescence and this language were held not to amount to a confirmation of the voidable grant. The land was wild and uncultivated.

. In view of these authorities it would be going far, to say that the mere conversation with Cass could of itself amount to a confirmation of the lease. And the cases of *Hoit* v. *Underhill,* and *Hale* v. *Gerrish,* in our own reports, appear to be the same way. But this case is distinguished from the others in the important particular, that here the land conveyed was in the possession of the grantee, which was not the fact in the other cases during the several periods of the imputed acquiescence. In those cases there was nothing substantial for the party to acquiesce in. In this, he saw through a succession of years the grantee in the possession and improvement of the land, knowing his own title, and instead of interposing to claim his own, deliberately referred to the deed he had made, and said that the party could hold the land according to its purport. Here there was significance in the acquiescence imputed, because there was something material for the party to acquiesce in. He acquiesced in the grantee's use of the land and perception of its profits. This acquiescence appears to us to lend significance and force to the language proved, and to distinguish it widely

in effect from the language of the parties in the several cases that have been referred to.

We think it would be going too far to say that such language, taken in connection with the forbearance of the party for the long period of six years and more, to disturb the lease and the possession under it, did not afford an indication of a purpose to confirm the lease; that it ought not to be ranked at least among the "slight acts and circumstances" affirmed by Chancellor Kent to be sufficient to give validity to such voidable acts.

If this were a doubtful point however, it might well be conceded to the tenant in this case, because there is another element which must be deemed decisive.

The deed of Charles C. Murray to the demandant was dated on the 26th day of September 1839, and recorded on the day next following. The lease to the tenant from the same grantor though bearing the much earlier date of the 3d of February 1832, was not recorded till long afterward, that is to say on the 19th of November 1841.

The deed to the demandant must therefore have priority in effect, unless when he took it he had notice of the life lease, the earlier act, under which the tenant claims.

No actual notice was proved. Was notice to be implied from the possession of the tenant? In *Dey* v. *Dunham*, 2 Johns. Ch. 190, Chancellor Kent said, that "The notice that is to break in upon the registry acts must be such as will with the attending circumstances, affect the party with fraud. There may possibly be cases, as Lord Hardwicke observes in *Hine* v. *Dodd*, 2 Atk. 275, in which the registry acts are set aside upon notice divested of fraud; but then the proof must be extremely clear."

Substantially the same thing was said in *Norcross* v. *Widgery*, 2 Mass. 509, by Chief Justice Parsons. "When a prior conveyance not recorded until one of a subsequent date, is attempted to be supported on the ground of fraud in the second purchaser, the fraud must be clearly proved."

It has been held in general terms, that the open visible possession of land, is notice to all the world that the occupant has a deed. *Colby* v. *Kenniston,* 4 N. H. 262. But it is obvious that this rule must be taken with qualifications, and that cases may exist, in which such possession does not afford any indication of the title under which the occupant claims.

The present is one of such cases. The occupant had been in possession a number of years without any title, and after having acquired one, continued in as before, and without any change in the mode and character of his occupancy, whether by improvements increasing the value of the land, or otherwise. We think it plain, that occupation under these circumstances, can afford no indication of a claim of title, so as to place a second purchaser upon his guard, or to raise the imputation of fraud against him for taking a conveyance of the same party under whom the occupant has acquired a title. It had no tendency to put the party upon inquiry, even if such notice were sufficient in a case where the law has established a registry, as the proper source of information concerning the title.

We therefore conclude, 1. That the lease from Charles C. Murray to the tenant made on the third day of February 1832, being a voidable act of an infant, was not avoided by the deed of the lessor to the demandant of the 19th of December 1832, because an infant can not during his minority avoid his deed. 2. That that lease derived confirmation from the lessor's acquiescence for more than six years after coming of age, in the possession that was held under it, and from the declarations to which Cass testified, showing the motive and intent of that acquiescence. 3. That by reason of the existence of the lease previously made, the conveyance of Charles C. Murray to the demandant made on the nineteenth day of December 1832, did not pass an estate in possession, and the demandant can not therefore recover under it. 4. That the deed to the de-

mandant made on the twenty-sixth day of September 1839, though executed long after the lease to the tenant, takes priority by force of its earlier record in the absence of notice. 5. That the possession of the tenant under the lease was not notice to the demandant of its existence, such as is sufficient to break in upon the policy of the registry laws, because the possession of the tenant was long anterior to the date and execution of the lease, and underwent no change at that crisis.

The demandant is therefore entitled to recover possession under the deed of the 26th of September, and there must be

*Judgment on the verdict.*