## BELL *v.* TWILIGHT.

A grantor of land took from the grantee a lease of the same for the life of himself and his wife, and remained in possession jointly with the grantee. The latter recorded his deed, and then mortgaged to one who had no notice of the lease, which was not recorded ;—*Held*, that the mortgagee was not charged with implied notice of the lease by the possession of the lessee, the original owner.

A purchaser for value, without notice of a prior unregistered conveyance, may make a valid conveyance to one who has such notice.

WRIT OF ENTRY.    The parties submitted this case to the court upon the following statement of facts :

At the time of the service of the writ the defendant was not tenant of that part of the demanded premises to which he has pleaded non-tenure, but the plaintiff was then and has ever since been tenant of the same as of freehold.

On the 18th of May, 1824, Daniel Fitts, who then owned and was in possession of the demanded premises, conveyed the same to his son, Ebenezer Fitts, by deed of warranty, which was recorded July 19, 1824.    At the same time said Ebenezer executed a lease of the same premises, "to said Daniel Fitts, and Hannah Fitts, wife of the said Daniel, or the survivor of them, to hold for the term of and during their natural lives, or the natural life of the survivor of them, from the 19th of July, 1824, yielding and paying therefor the rent of one dollar yearly, if demanded."    The lease was recorded April 25, 1836.    At the same time Ebenezer Fitts gave a bond to Daniel Fitts in the penal sum of $1,000, the condition of which was that Ebenezer should furnish said Daniel and Hannah Fitts with such things as they needed above what they received from the farm leased to them as aforesaid, and also to support his two sisters.

On the 19th of March, 1834, Ebenezer Fitts conveyed

the demanded premises to the plaintiff by deed of mortgage, and the condition was in the following words: "Nevertheless it is to be considered, and the condition of the foregoing deed is such, that if the said Fitts, his heirs, executors and administrators, shall well and truly pay unto the said Bell and his heirs and assigns, his note, of even date herewith, for $400, payable to said Bell, on demand, with interest annually; also the balance due from said Fitts to said Bell upon book account, and shall also indemnify and save harmless the said Bell from all loss or damage in consequence of a bond of indemnity, this day executed by said Fitts as principal, and by said Bell and Benjamin Jenness as sureties, to Hannah Fitts, then this deed is to be void; and it is agreed that upon non-payment of either of said sums aforesaid, within eleven months from the date hereof, said Bell may sell, at public auction, so much of said land as may be necessary to raise said sums, and give a clear and indisputable title thereto." Said mortgage deed was recorded March 19, 1834.

On the 20th of July, 1836 (the condition of the mortgage not having been fulfilled), the plaintiff, agreeably to the terms of said mortgage, advertised the demanded premises for sale, and on the 30th of said July sold the same at public auction, to the defendant, and on the 29th of the following April the plaintiff assigned his said mortgage to the defendant, and also executed and delivered to the defendant a quitclaim deed of the same premises; and the defendant at the same time paid to the plaintiff the sum at which said premises were sold to him at auction, as aforesaid. The defendant then went into possession of said premises. Said assignment and quitclaim deed were recorded on said 29th of April, 1837. Subsequently to this date Daniel Fitts died, and afterwards, on the 2d day of October, 1841, Hannah Fitts executed a quitclaim deed of the demanded premises to the plaintiff, August 1, 1844.

The plaintiff then demanded of the defendant to have

so much of the demanded premises set out to him as said Hannah would be entitled to, as her dower in the same. Whereupon the plaintiff and defendant mutually agreed that the plaintiff should have and hold, during the life of said Hannah, that part of the demanded premises to which the defendant has pleaded non-tenure ; and on the 29th of March, 1842, the defendant quitclaimed to the plaintiff all his right and interest in said part of the premises, during the life of said Hannah ; and on the same day the plaintiff executed to the defendant a writing, by which he agreed that he had received a conveyance from the defendant of said part of the demanded premises, in full of said Hannah's right of dower in the demanded premises. The plaintiff then took possession of the part of the premises conveyed to him by the defendant, as aforesaid, and has ever since been in possession of the same. Said Ebenezer, Daniel and Hannah lived together on the demanded premises until the death of Daniel, in 1841.

At the time of the execution of the assignment and deed from the plaintiff to the defendant, as aforesaid, the defendant had no knowledge of the existence of the lease, other than may be presumed from the fact of its being recorded, as aforesaid.

*Bell,* for the demandant, cited *Comstock* v. *Smith,* 13 Pick. 116 ; *Jackson* v. *Habble,* 1 Cow. 615 ; *Jackson* v. *Wright,* 14 Johns. 193 ; *Ellis* v. *Welch,* 6 Mass. 250 ; *Jackson* v. *Hoffman,* 9 Cow. 271 ; *Blanchard* v. *Brooks,* 12 Pick. 47 ; *Perkins* v. *Bumford,* 3 N. H. Rep. 522 ; *Hadduck* v. *Wilmarth,* 5 N. H. Rep. 181 ; *Rogers* v. *Jones,* 8 N. H. Rep. 271.

*G. Marston,* for the tenant, cited *Trull* v. *Bigelow,* 16 Mass. 406 ; *Bates* v. *Norcross,* 14 Pick. 224 ; *Boynton* v. *Roose,* 8 Pick. 329 ; 4 Kent Com. 457 ; *State of Connecticut* v. *Bradish,* 14 Mass. 296 ; *Don* v. *Van Ness,* 5 Halst. 102.

Woods, J.    On the 18th of May, 1824, Daniel Fitts, then in possession of the demanded premises, by deed of warranty of that date conveyed the same to Ebenezer Fitts.    That deed was recorded on the 19th of July, next following.

On the first day named Ebenezer, the grantee, made a lease of the premises that had been conveyed to him, to Daniel, the grantor, and Hannah, his wife, and the survivor for the life of the survivor, from the 19th day of July, 1824, at a nominal rent.    This lease was not put on record until the 25th of April, 1836.

On the 19th of March, 1834, Ebenezer Fitts conveyed the same premises in mortgage to the demandant, who had no actual notice of the lease, previously made to Daniel and Hannah Fitts.    This mortgage contained a power to sell the premises at auction, upon the failure of the mortgagor to perform the condition, or so much of the premises as might suffice to produce the necessary sums.    This mortgage was recorded on the day of its date.

Its conditions, not having been kept, the demandant, on the 30th of July, 1836, having duly advertised, sold it to the tenant at public auction, according to the terms of the deed of mortgage; and on the 29th of April, 1837, assigned his mortgage and quitclaimed his interest in the premises to the tenant, who paid the sum at which the premises had been struck off to him at auction.    These conveyances bear date the 27th of April, 1837, and were recorded on the same day.    The quitclaim, as well as the assignment, appears to have been the deed of the demandant, and not of the mortgagor, whose attorney he appears to have been constituted to sell the property.    Possession was taken by the demandant under these conveyances.

On the 2d of April, 1841, Daniel Fitts, having, since the 29th of April, 1837, deceased, Hannah, his widow, conveyed the premises, in which she took a life estate by the deed of the 18th of May, 1824, to the demandant, who

now claims under her deed. Ebenezer Fitts and Daniel and Hannah Fitts lived upon the land from the time of the conveyance of the 18th of May, 1824, until the death of Daniel, in 1841. Hannah Fitts, though claiming a life estate in the whole, by virtue of the lease was clearly entitled to dower, and the same was assigned in favor of the demandant, to whom she had conveyed her rights, and the demandant took possession of so much by the consent of the tenant, who has disclaimed it. To the remaining portion demanded by the writ, the title of the tenant is regularly derived from Daniel Fitts, through Ebenezer Fitts and the demandant.

The demandant, on the other hand, insists upon an estate for the life of Hannah Fitts, acquired by him through her deed, executed after the date of his quitclaim to the tenant. His deed of quitclaim operated so far as to convey the estate it assumed to convey, unless the life estate of Daniel and Hannah Fitts stood in the way; and if so, it conveyed the reversion expectant upon the determination of that estate. In any event, an interest or estate in the land described passed by the deed. If, after that quitclaim, he acquired an interest in the premises described, other than that which he had at that time, his conveyance does not estop him from setting it up.

It appears that when Ebenezer Fitts made the mortgage to the demandant, the latter had no notice in fact of the lease which the mortgagor had previously made to Daniel and Hannah, of the same premises; and the lease had not then been recorded, nor was it recorded till long after. His mortgage, therefore, takes precedence of the lease, and passed a good estate in fee simple, so that the subsequent conveyance of Hannah Fitts to the demandant was wholly inoperative, except to the extent of her interest in the land as dowager, unless the demandant was chargeable with constructive notice of the lease. This, he contends, is the case, upon the ground that Daniel

Fitts, who had, by the lease, the first estate for life, was in actual possession of the land, and that such was sufficient to put him upon inquiry, and so charge him with all that he could, upon diligent inquiry, have ascertained in regard to the title.

This branch of the doctrine of constructive notice received some discussion in the case of *Emmons* v. *Murray*, 16 N. H. Rep. 385. The kind and degree of notice that is sufficient to stand for a substitute for an actual record of a deed, must be such as to charge the party with fraud in taking the second conveyance. He must know of the prior conveyance, and intend to defeat it. A floating rumor — a vague suspicion of a conveyance — is insufficient. The law has provided a registry for deeds, in order that persons having occasion to know what conveyances have been made, may ascertain, by inquiry, and may in general rely upon what they there find. The doctrine of that case was, that notice of an unregistered conveyance is not to be inferred from a possession which commenced before and continued after the conveyance, without any change of the manner of the possession or use, indicating an altered estate. It would materially impair the security which men ordinarily feel in a public registry, and greatly infringe upon the beneficent policy of the registry laws, to charge the public with notice of any estate that a party in possession might acquire. The possession has in fact in such cases no tendency to put men upon inquiry.

The facts in the present case do not correspond, in every respect, with those of *Emmons* v. *Murry*, nor do they, perhaps, admit of the application of the doctrine in the exact formula in which it was there stated. But this is a case in which the possession has been quite as consistent with the recorded conveyance as with the lease, with the notice of which it is said the mortgagee was chargeable. The lease would have entitled the tenants for life to the exclusive possession.

Bell *v.* Twilight.

It would be extravagant to say that the continued possession of Daniel Fitts, after the conveyance to Ebenezer, in conjunction with Ebenezer, could give to a purchaser, treating with the latter, such intimation of the existence of the lease as to charge him with a knowledge of it, and with a fraudulent intent to defeat it.

We therefore conclude that the deed of Ebenezer Fitts to the demandant took priority of the lease previously made to Daniel and Hannah Fitts, but not then recorded.

In 1837, April 29, the demandant conveyed to the tenant whatever he could convey in his own name, and assigned the mortgage to him. But the lease from Ebenezer Fitts to Daniel and Hannah had before that time been recorded, and notice thereby given to the world of its existence; and the question is, whether that fact prevented the tenant from acquiring, by the assignment and quitclaim, all that he would have acquired without any actual or constructive notice of the lease.

In an early case in the English court of chancery, *Harrison* v. *Forth*, Prec. Ch. 51, it was decided that where a purchaser, without notice, and for a valuable consideration, had conveyed to one who had notice, the title of the last purchaser was not impaired by the notice, " because otherwise an innocent purchaser, without notice, might be forced to keep his estate."

In *Lowther* v. *Carlton*, 2 Atk. 139, Carlton had bought the estate from the Marquis of Wharton, who was an innocent purchaser, without notice. The question whether Carlton had notice when he purchased, was held, upon the grounds before stated, to be immaterial. This was before Lord *Hardwick*.

In *Sweet* v. *Southcote*, 2 Bro. Ch., 66, which was before Lord *Kenyon*, when he was master of the rolls, the bill was to discover whether the defendant, who was assignee of a mortgage, had notice, at the time he took the assignment, that the mortgagor had only a life estate. The defendant

pleaded in bar to the discovery, that he was assignee of the mortgage for a valuable consideration, and through many assignments from persons who had no notice. The plea was held good, and the M. R. said: "Whether he had or not, was immaterial, if those through whom he claimed had not; he having the right to avail himself of their being purchasers without notice."

This very reasonable doctrine of equity has been recognized in the courts of this country, and applied to cases in which innocent purchasers have been deemed entitled to hold the estates they have acquired against prior unregistered conveyances. The right to retain the estates thus acquired would be imperfect if it did not involve the right also of conveying them; and if the tardy registration of those prior conveyances could, by constructive or even actual notice, prevent persons acquiring, in good faith, the titles honestly purchased before the registry.

The cases of *Trull* v. *Bigelow*, 16 Mass. 406, and *Boynton* v. *Reese*, 8 Pick. 329, cited by the counsel for the tenant, were decided upon the equitable principle referred to, and are authorities directly in point. In other States the same doctrine has prevailed. *Fenno* v. *Sayre*, cited in the U. S. Dig. from 3 Ala. 458, and *Ledyard* v. *Butler*, 9 Paige's Ch. 132.

In short, the title acquired by this demandant under the mortgage, as against the unrecorded lease, was as perfect as if no such lease had ever existed; and did not want that very material element of a perfect title—the capacity of being alienated; and whoever purchased it of him, whether with or without notice of the earlier title of Daniel Fitts and wife, is entitled to the protection of his innocence and want of notice.

The consequence is very plain, that the demandant took nothing by the conveyance of Hannah Fitts, except her right of endowment in the land, and cannot maintain his action upon the facts stated, and there must be

*Judgment for the tenant.*